In re PETITION OF KELLY *v.* THE RECEIVER OF THE GREEN
BAY & MINN. R. CO.

*(Circuit Court, E. D. Wisconsin.   January, 1881.)*

1. RAILROADS—ADVANCES FOR CONSTRUCTION — MORTGAGE BONDHOLD-
ERS.

A claim for advances, made to a railway company for the purpose
of completing the construction of their railroad, will be postponed in
equity to the lien of the mortgage bondholders, unless such advances
were made in consequence of the requests, promises, and acts of all
the bondholders.

2. SAME—SIX-MONTHS RULE—SEVENTH CIRCUIT.

Under the "six-months rule" of the seventh circuit, such claim
could not be enforced against a receiver where the same had accrued
more than six months prior to his appointment, and the bondholders
had not been estopped from disputing the claim by reason of their con-
duct.—[ED.

In Equity.   Demurrer to Intervening Petition.

*E. H. Ellis* and *Finches, Lynde & Miller,* for petitioner.

*E. C. & W. C. Larned* and *T. G. Case,* for receiver.

DYER, D. J.   This is an intervening petition by David M.
Kelly, asking for the allowance of a claim of nearly $300,-
000 against the receiver of the Green Bay & Minnesota
Railroad Company.   The petition is demurred to, and it is
contended by the receiver that, upon the facts stated in the
petition, the petitioner's claim cannot be recognized as one
entitled to priority over the bondholders' mortgage lien.

The material allegations of the petition are that in 1872
the Lackawana Iron & Coal Company of Pennsylvania loaned
to the railway company $251,500, for which the latter com-
pany gave to the iron and coal company its promissory note,
payable February 20, 1873, and bearing interest at 7 per
cent. from November 20, 1872; that the loan was made for
the purpose of enabling the railway company to complete the
construction of the road from Fort Howard, Wisconsin, to a
point on the Mississippi river, opposite the city of Winona.

It is further alleged that, contemporaneously with the giv-
ing of the note, the petitioner, at the request and in behalf
of the railway company, and upon demand of the iron and

coal company, deposited with the last-named company 55,331 shares of the capital stock of the railway company as collateral security to said loan, which stock was the property of the petitioner, and exceeded in value the amount of the note and interest; and that the petitioner was at the time the contractor of the railway company by whom the road was constructed; that at the request of the railway company the petitioner paid from his own personal funds, on the twentieth day of February, 1875, the full amount, principal and interest, then due on the note, namely, $293,038.11. It is alleged that this payment was made by petitioner for the benefit of the railway company and of the bondholders; and that he has not been re-imbursed the money which he so advanced in payment of said note.

It is further alleged that long before this loan was effected, and at the time the same was made, and ever since that time, the bondholders, at whose instance the receiver in the present foreclosure action was appointed, were and have been in the actual control and management of the affairs of the railway company, through and by means of the directors and other officers of the company, as their agents nominally in control of the company and its officers, but actually under the control of the bondholders; and that the bondholders, who were also stockholders, authorized and directed the loan to be made for the purpose of constructing said road, and also authorized and directed the expenditure of the amount of the loan in construction of the road, and that the same was accordingly, with their knowledge and consent, expended in such construction. Further, that the iron and coal company was a stockholder of the railway company, and as such also knew that the money so loaned by it was to be and was actually expended in construction; and that such work of construction was done not only with the consent and approval of the iron and coal company, but at its request and by its direction.

It is then alleged that the loan was absolutely necessary for the completion of the road, and that without such loan the road could not have been built, and the bonds of the railway

company would have been of little or no value; that the loan was effected for the purpose of giving value to the bonds and to the mortgages in suit; that the bondholders, by means of said loan, gave to the securities held by them their principal if not their entire value; and that by reason of the premises the petitioner has a lien superior to the rights and equities of the bondholders, and that his claim to be re-imbursed the amount advanced in taking up the note is a prior lien upon the railroad and other property of the railway company.

It is further alleged that the trustee in the mortgages foreclosed in this action, and all the bondholders and stockholders of the railway company, had knowledge of the facts set forth in the petition as they occurred, and especially of the facts and circumstances relative to the loan and the payment thereof by petitioner for the company, and that all of said transactions took place with their full knowledge and consent.

There is also a general allegation that the present action to foreclose the first and second mortgages upon the road is a collusive one, and is prosecuted in fact for the benefit and under the management of those bondholders who hold and control a majority of the stock of the company, and for the purpose of avoiding payment of petitioner's claim.

The prayer of the petition is that an order may be entered establishing and allowing, as against the bondholders, the alleged right and claim of the petitioner to the sum of $293,-038.11, with interest, and directing the receiver to pay the same out of the earnings of the road, or, if such earnings shall not be sufficient for that purpose, then that petitioner's demand may be paid out of the proceeds of the sale of the mortgaged property before payment of any part of such proceeds to the holders of bonds. The main points of the argument advanced in support of the petition are that the moneys borrowed from the iron and coal company were used by the railway company to complete its unfinished road; that the loan was effected and the expenditure made at the request and under the direction of the bondholders, and that the new construction thereby accomplished gave

value to the bonds; that if the bondholders had taken possession of the road before this money was advanced and expended, their security would have been comparatively valueless; that if there had been unfinished road in process of construction when the receiver took possession, the court could have ordered him to complete the construction at the expense of the property and for the benefit of the bondholders; and if the court could and would have authorized the receiver so to act, it can now properly direct, and in justice to the petitioner should direct, that the advance which he made in taking up the obligation of the company, thus incurred for construction purposes, be made a charge upon the property superior to the mortgage liens.

I have carefully examined the authorities cited on the argument, and there is no doubt that, in the case of a railroad in the hands of a receiver appointed by the court, circumstances may exist requiring the expenditure of money by the receiver for new or additional construction, and that in such circumstances the court, for the purpose of further conserving the property and protecting the interests of bondholders, at their instance may direct such expenditure to be made. Since the exercise of such a power would be extraordinary, the necessity should be great, and the right of the court, under the circumstances of the case, should be clear. Undoubtedly, also, before any legal proceedings are instituted by the bondholders or their trustee to make their security available, the bondholders may exercise such control over the property, and may so request and sanction the act of a third party in advancing money for the benefit of the property as to estop them from setting up their mortgage as a lien paramount to the claim of one who had thus acted on the faith of their request or direction. The theory of the present petition evidently is that the alleged acts of the bondholders, in connection with the loan by the iron and coal company to the railway company, should be held to have operated as an estoppel *in pais,* and that, therefore, they cannot now assert their mortgages as liens superior to the petitioner's alleged right in equity to charge the property with the payment of his advances. Since all

expenditures by a railroad company for construction or permanent impróvement may enure more or less to the benefit of holders of its bonds, and since the effect of such an estoppel as has been spoken of must be to displace the mortgage lien, it is clear that to create an estoppel a plain and undoubted case should be made. It is not sufficient to say that *some* of the bondholders, or a majority of them, or such as have been most active and influential in promoting the concerns of the road, have done acts which as to them create a superior equity in favor of a third party who has made advances; for, in such case, the transaction would have to be regarded as one between individual bondholders and such third party. The mortgage lien as an entirety can only yield to such equitable claim when acts have been done which bind *all* the bondholders because directed and sactioned by all; and I am inclined to the view that in the present petition the pleader intended to be understood as alleging that all the bondholders directed the loan from the iron and coal company to the railway company to be made.

Although the petition probably alleges enough to show that the bondholders approved and even requested and directed the original loan by the Railway Company to be made for the purpose of new construction, and the moneys to be so expended, I am of the opinion that it is fatally defective for want of allegations to the effect that the petitioner's personal connection with the transaction was the result of requests, directions, or promises of indemnity to him on the part of the bondholders. The allegations in this behalf are that he · was the contractor for the new construction, and that at the request of the railway company, and upon the demand of the iron and coal company, he deposited stock as collateral to the loan, and that *at the request of the railway company*, which was unable to pay the note, *he advanced for the company*, and paid from his own personal means, the indebtedness represented by the note. This is the scope of the allegations in respect to the petitioner's personal connection with the transaction. It is true, it is further stated that the payment was made for the benefit of the railway company and for the ben-

efit of the bondholders, who, it is alleged, had the management and control of the company to the extent before pointed out; but it does not follow, from the fact that the bondholders may have authorized and requested the original loan to be made and the moneys to be expended, that the petitioner could, by the subsequent payment of the debt for the accommodation of the company, acquire an equity over then-existing mortgage liens. If his action was merely that of a volunteer, it will not be doubted that he could not maintain his claim as against the mortgages. And to give him a superior equity, on account of his payment of the company's indebtedness, it must be alleged and shown that he acted under such inducements from the bondholders, and had such dealings with them in the transaction, as estop them to assert their liens against his claim. As before indicated, it is not enough to say that his money, for which he now seeks re-imbursement, has gone into the road, and that the bondholders have been benefited thereby. Before relieving the company by payment of its note, the petitioner could have required from the company and its secured creditors express security of a character at least co-equal with the mortgages, if not superior to them; and in the absence of such security the mortgage liens could only be displaced by such affirmative acts on the part of the bondholders as would in equity operate to estop them from asserting those liens in hostility to him. In this connection it is to be borne in mind that, upon a mere showing that the petitioner paid an indebtedness of the company incurred on account of construction, and in the absence of allegation and proof of such special facts and circumstances as would raise an estoppel against the bondholders, the petitioner's claim could not be enforced because not within the six-months' rule which prevails in this circuit.* The allegation that the fore-

---

*The " six months rule " above cited refers to a ruling of Judge Drummond, of the seventh circuit, " by which the practice is established of disallowing claims against a receiver which originally were claims against a railroad company,—such as for supplies, wages of employes, and the like, —and which did not accrue within six months before the appointment of the receiver, unless there are special circumstances or equities which ought to take the particular case out of the operation of the rule."—[ED.

closure suit in which the present intervening petition is filed is a collusive action, and prosecuted for the benefit of bondholders, and to avoid the payment of petitioner's claim, cannot, I think, avail the petitioner, because it is not shown wherein the suit is collusive or irregular, or wherein the bondholders or their trustee are prosecuting it wrongfully or without right.

For the reasons stated I am of opinion that the demurrer to the petition should be sustained; but if it shall be the view of counsel for the petitioner that a case can be stated that shall come within the principles laid down in this opinion, leave will be granted to file an amended petition within 10 days.

